Apparently the applicant is not in the room. All right. Maybe if you could call Chambers and see if she was coming. Right. All right. Well, we had a motion, but we'll postpone the motion and we'll hear argument then first in Webzero against Clicvu, numbers 2009-1483. Gordon, your honors, may it please the court, Harry Chambers on behalf of Webzero LLC, the two legal issues that are presented by this appeal deal with whether the Clicvu Spamex product infringes on the 481 patent. The trial court had concluded that two of the limitations were not met. The two were not. The two that the trial court concluded were not met concerned whether the Spamex product automatically associates a disposable email address that is created by the product once it's launched with a web page that is then dedicated for use by the entity that's requesting that email. And we'd submit that controlled by this court's precedence in particular, cases such as Resonating v. Altium Web Systems and CollegeNet v. Apply Yourself, the district court's legal conclusions in construction of the patent limitations were in error. So with regard to the automatic limitation, the question- Chamberlain, are you challenging the court's claim construction? Or are you saying it was improperly applied? It was improperly applied is what we're saying. The claim construction is accepted as stated by the court. Yes, your honor. It largely is. We think that with regard though to the application, in particular with regard to the automatic, I don't want to quibble about that because we really do believe that with regard to those two limitations, this is nothing but a semantic quibble and one that's in error at that. So what you're saying basically is that the claim construction was correct but was improperly applied to the- Applied is our principle argument with regard to both limitations. Yes, your honor. That's correct. We believe that the question as properly framed and then answered should have been that once the Spamex program is activated, does that program associate an alias or disposable email address with a web page? And we submit that ClickView's own evidence demonstrates that in fact it does. And that process is automatic in the way that's specifically contemplated by the 481 program. To illustrate that, we've put schematics side by side in our opening brief, pages 14 through 17, pages 25 and 26 explain that. But in the reply brief, we apply the CollegeNet analysis with regard to what constitutes an automatic association or an automatic step in a process. And according to CollegeNet, any process or step that eliminates a manual task for the user is precisely the definition of automatic. In this case, in the case of the Spamex product, the alias is automatically generated. The user is not required to devise to manually enter the alias email. The domain of the web page is automatically captured. In fact, a Spamex obtains the web page's domain, it happens when the program is launched, without requiring the user to determine or manually enter that web page. It simply pops up on the screen. The alias and the web page's domain are automatically brought into a relationship. And that's what the district court defined associate to mean, to bring into relationship the parties are in agreement about that. And that happens at the time that we have a create address for the Spamex program. And the contemplated 481 patent describes exactly that process. As illustrated in Exhibit 6 to the Green Declaration, which was offered in support of ClickView's motion for summary judgment of non-infringement, the Spamex product specifically identifies the website domain by parsing the web page that's associated with the entity that's automatic association. Without the automatic association to the web page, the program is going to go no further. And the user's optional ability later in the stream, actually both products do this, to make changes to the domain name or to manually add more than one domain name. Don't change the automatic association at all. It's simply an option. But the, as I understand, Spamex associates the new email address with the domain and not the particular page. Right. And we think that's a distinction without a difference. That is the one or more than one logical construct that CollegeNet and Resonate both address. Resonate addresses it in this way. The term website is an abstraction. And we have actual testimony from the inventor in this case, Mr. McIntosh, on page 198. He describes it from a computer scientist's point of view. What we're talking about when we talk about a domain or a website is a collection of web pages. So when CollegeNet refers to the fact that you've got an automatic association with a web page or more than one web page, the abstraction here is that a website is simply a collection of these web pages. The web page that the user is looking at when a request to provide an email address is made is what kicks off both of these programs. The programs don't initiate unless you're looking at a web page that's requesting you to input something, namely an email. But is the association made with each individual web page or with the domain site itself? Well, Spanx argues that it's made with the domain site itself. Because it has several web pages. Right. Because it has several web pages. But as Resonate says, what we're talking about here, you can't have a website unless it has at least one web page. So when we talk about this abstraction, what are we doing when we dedicate use of either program to an entity? What you're trying to do is you're trying to respond to an entity that is hosting this web page and is asking for an email address. You're trying to dedicate an alias email address, a disposable email address, that that entity will then respond to so that your actual email address isn't cluttered up. Well, that process of automatically associating with the web page or the domain site, whatever it might be, it happens in both programs in the same way, as Mr. Green's declaration states at pages 86 and 87 of the record. And if you contrast that with pages 199 through 201, which is the Macintosh declaration, both programs in the same manner, performing the same function and coming to the same result, both literally and by the doctrine of equivalence, are associating with the web page. And whether it's parsing the domain by using the algorithm, I believe that Spamex uses document domain and Emailius, the 481 patent, uses document URL, which identifies a specific web page, it is associating with the web page that you're responding to. My understanding, let's try out a hypothetical and see if I systems work. Suppose that, just to take an example in real life, that I click on to Expedia.com and I'm interested in a number of transactions in the course of visiting that site. And several of the different pages that I visit each request an email address from me. If I understand Spamex correctly, that will create a different email, I mean, I'm sorry, Spamex will create a single email address for the entire domain. And each time I'm asked to, for my email address, it will simply give the Expedia.com domain email address that is created, correct? Well, I'm not certain that that is correct, your honor. I think that's what is it that leads you not to be certain. Well, because what you have to do is you are basically parsing the domain from the web page that made the request. And if it was Expedia, or if it was CNN.com, or it was the court's web page. And in equivalent function, the Emailius product does essentially the same thing. Actually, it does the same thing. Well, and the patent simply requires that the association is being made automatically. But the patent will, if I understand it, the patent will create a different email address for each of those pages, correct? It actually does not necessarily have to do that for each of those addresses. What it does is the patented product, the 481 product, will identify and parse in the same way the web page that is making that request, whether it's on CNN.com. This is explained in Mr. McIntosh's declaration. Keep in mind my hypothetical. I have multiple net web pages within a single domain. So, I want you to be careful here to make sure that you describe the patented system correctly. Now, your assertion is that the patented system doesn't necessarily create different email addresses for each web page. It can create a single email address for the domain and repeat that with respect to each web page. We're talking about the Spamex product now? I'm talking about the patent. The patented process, as I understand it, yes, it can do that with regard to it, but the source, and actually the source for both products at the association stage, both products are taking the web page to parse that information. Yeah, I know that's where they start. The question is where do they end up? That is, do they end up creating a single domain-related new email address, or does it create an email address that's specific to each web page? My understanding of the invention was that it did the latter, and you're telling me now, no, it does the former. Well, no, your honor, the invention creates an alias email address that will attach to each of the specific web pages that are made. And is each of those addresses different? And each of those addresses can be different, but it also can attach to the broader web domain, because that is what hosts each of the individual web pages. But how does it become dedicated, then, for use by an entity? And then it becomes dedicated for use by the entity, because it has attached, it has the entity that's making the initial request is the entity that is associated with the web page that first made that request. So if it's made multiple times, your honor, in relation to what you're asking. And this, by the way, demonstrates both the automatic nature of it and the dedicated for use nature of it. Once the programs are launched, and both programs do this, but let's talk about the infringing aspects of the Spanx product. Let's talk a little bit about the way that the patent system dedicates the alias email address with each web page. That has to be associated with each web page. Is that correct? That's correct. Each one of the web pages has a dedicated email address. Right. And there is, right, there's an algorithm that associates the, according to Mr. McIntosh's testimony. And it's the same one for each web page. And it would be the same one for each web page. Is it a separate one? Is it a separate email address for each web page that makes the request? Is that true? No, no. Is it a different alias web page being unique to each one of the web pages? All right. Is that what you argued before the patent office? The argument to overcome the Kennedy Right. Page 11 of the patent. I know it's in a statutory brief. Yes. Right. There was a dedicated for use by an entity associated with each web page. Yes. Entitled the entity to send email messages to the user and addressing each targeted web page. So it's a separate email address for each web page. And that web page is dedicated to that alias. Right. And actually the web page is dedicated to the entity. The actual wording of the patent is that an association is made automatically that is dedicated for use by an entity that is associated with the web page. All right. And that the automatic application of it happens without additional user input or intervention once the program is launched. And the analogy that was made in CollegeNet about the automatic association is just that. Once the program is launched and on either competing product, you click create address or create email alias, you have made the association with the web page that is making that request. And in response to your honor's question about, well, can the Spamex then have an additional feature which permits that to be automatically, to populate that field automatically with regard to all web pages in the same domain? Yes. But that doesn't defeat the limitation at all because according to CollegeNet and according to Tate Access and others, the word dedicated to an entity can mean one entity or more than one entity. In the same manner that a web site hosts multiple web pages. By definition, it has to. If I could return to the question that you and I were discussing a moment ago. Yes. The basis for my supposition that the patented device attached to unique and different new email address to each web page is principally column 10, lines 28 through, looks like about 37. All right. Which says that upon receiving the email forwarding address request and so forth, the system determines if an email forwarding address already exists in the user's account that is associated with the web page address, the URL. Right. Yes, the URL. All right. Included in the email forwarding address. If such an email creates a new standard forwarding address that is automatically associated with the web page address URL and assigns properties to the email forwarding address, which suggests to me, at least, maybe I'm not reading this correctly, suggests to me that if the system does not find an email address that's specific to that URL, then it creates a new one. Why isn't that the case? I don't quarrel with your honors. In that case, if that's the way the patented system works, then it does create, it would seem, a specific new email address for every web page, i.e. every URL. Yes, it would for every URL. I thought you were telling me before that the patented system doesn't necessarily create a new... The association, your honor, and I apologize for my lack of specificity with regard to this, but perhaps even lack of proper terminology and usage. When you are attaching the, when you're automatically associating the new email alias, the new alias email with a web page, you have already made that association. Let's go back to my... I'm confused now because I want to make sure I understand. All right, let's be specific. Okay. Let's be specific to the example I had of Expedia. I go to Expedia and I visit three different pages. I want a hotel in Paris, I want a flight to Berlin, and I want a hotel in Berlin. It so happens, I don't think this is really the way Expedia works, but it so happens that each of them requests my email address. They want your email address and they want to potentially spam that address. Does this system create three separate email addresses for me or does it create one for my three web pages visited in connection with Expedia? 481, the 481 patent would determine whether you have already, I know it does this automatically, whether you have already associated an alias email address with that particular URL or web page. Okay. I have never visited Expedia before, so I have never associated an email address with each of those URLs. So I go URL one, URL two, URL three, all within the domain of Expedia. Does the system of the 481 create three email addresses for me or one? My understanding of the system is the 481 system will look at the URL and determine, by having parsed from the web page, the domain name, whether you have actually assigned that email address to any of the subsequent requesting entities that are asking for your... In terms of whether it does so automatically... I'm having a hard time translating your answer into the answer I was looking for, which is either three or one. I believe that according to the patented process in columns 10 and 11 that you're talking about, it would create three separate email addresses identified... That's what I thought. All right. I'm sorry. Certainly, I'm sorry. Okay. So I think it makes one. All right. Again, for matters of technical... I think that this is a matter of technical concern that illustrates why perhaps summary judgment on this aspect of the claim limitation is inappropriate. I'm advised that the email address which attaches to the entity, is dedicated for use by the entity, would apply to the entity to the domain that is associated with the entity. And while the 41 patent allows more specificity that the actual process would attach the email address to any entity that is associated with the web page that was within that domain. Okay. Thank you, Mr. Chamberlain. We will restore your two minutes of rebuttal time. All right. Thank you. We'll hear from the opposing counsel. Mr. Block. Can we just start right from the beginning, Mr. Block, and see if you get the same answer to my expedia question that Mr. Chamberlain did? I had a whole long presentation, but I would be more than happy... No, you can get into your presentation. Your question gets the heart of the matter. In actual fact, if we look at the 41 patent, and not look at E-Malleus, the plaintiff's product, but look at the patent itself and the defined terms, then the answer is yes. Their product creates three separate emails, three separate forwarding email addresses. Okay. I thought that would probably be your short answer. Now, for the slightly longer version, what is it that Mr. Chamberlain said immediately before he sat down that you disagree with, with respect to the way he got to the conclusion that the 481 patent is capable of creating only one email address, as opposed to in my expedia case? Claim one. Yeah. Found on, I guess, column 16, I'm not sure the page number, is that during any internet session where a user is viewing a web page, that's important, that includes a prompt for an email address, a method of creating and forwarding an email forwarding address to said user. Now, web page was defined in the Markman determination as a single web page, which may be part of a larger body known as a website. So, based on the claims, the 481 patent will create a forwarding email address for each web page that you go to at a domain that asks for an email address. Now, that their product is able to exactly, but SpamX does not do that. SpamX focuses on the domain, so that, for instance, you go to Expedia. Now, I believe you could, at Expedia, go rent, get a flight and a hotel room and a car. I could be wrong on this, but assuming for a second, each domain, each website for each email address, in SpamX, you can use the same email. You don't have to. You don't even have to use an associated email. We'll get to SpamX in a second, but it's one disposable email for the whole domain, or you can choose to do that. For the 481 patent, it's a different email address, which is put into a folder, so that you could have one. Actually, I'm going to strike that. It's a different email address for every web page as part of that website. Which is unique to each one of those pages. Exactly, and because of that, SpamX is not the 481 patent. It's not infringing on the patent. What you could use under SpamX, couldn't you have one email for every web page? No, and the reason is because SpamX doesn't work that way. SpamX will associate the domain, so if you use a domain, it doesn't go to the web page. You can choose to use multiple disposable email addresses for the same domain, or you could use... Is that correct? Yes, but there is no automatic association. You could use different email addresses for the same domain using SpamX. But it's not about page, it's about domain. In other words, the patent is focused on pages. The SpamX is focused on the domain. It's a different analysis, a different function. It's a different way of doing things. What if you have a one-page website? Do the two systems operate identically in that situation? The two systems don't operate the same at all. But for one page website, at that point, there would be one email address, one disposable or forwarding email address at issue. But the systems don't work the same. What is the difference then at that point? The difference is how SpamX creates the disposable email address. How the steps that are taken for that, this association aspect and whether or not it's automatic is also completely different. And we submit that it is not automatic in any way with regard to SpamX. Why isn't it automatic? All you need to do is to click two different steps before you select the email. Actually, no. That's not quite right. For SpamX, first off, it's a separate website. The application merely opens up that website. The user must launch the application for SpamX. The user must choose to create an email address. They must either accept defaults or complete a questionnaire. The user must submit, i.e. accept the creation of the email. Only then is the disposable email address associated with the provided information. It's not necessarily the domain or anything else. It's just the provided information. You don't have to use SpamX. It's not about creating this disposable email for web pages. It's for creating disposable email for anyone who asks for your email address. Whether you're joining a bar association and they're asking for your email address, whether friends want an email address or associates, or whether a website, a domain requests the information. The focus is not on domain. It's on the creation of this disposable email address. It's a different focus for the system. There's nothing really automatic here because you have to put in the fields or accept the fields. It's entirely different technology. Excuse me. Let me ask you one question if I could, please. In claim one, the automatically associated with said web page language. Yes. Focusing in particularly on automatically associated, are those words directed to claim one setting up this arrangement or does the automatically associate refer to the kind of situation that exists after the forwarding email address is in place and somebody goes back to the website again? I'm sorry. Can you restate that? I missed that last line. I apologize. No, no, no. The question maybe wasn't as clear as it should have been. Let me ask you. Let me ask you. Try and get at it. Automatically associated. Assume for the moment that someone has... Well, what does automatically associated refer to? Does it refer to the process? Does it exist in the process of creating and forwarding an email forwarding address? Or does automatically associated refer to the email address being automatically associated after one has established the forwarding address? Under the patent, it's the former. All the steps go together. It's the creation. The email is created with regard to the forwarding email is created with regard to that web page. In looking at it, I mean, I was reading it says a unique email forwarding address for the user. That is or will be automatically associated with said web page. Exactly. It'll automatically... In other words, after you've set up this forwarding address that goes to the target email address, if you go back to the website, you have a forwarding address that is now automatically associated with that website, right? Right. But Spamex doesn't do that. No, I'm not asking about Spamex. Yes, yes. But you are correct. In terms of what the... I said website. I just said web page. That's right. If I could address... Does that answer your question? Yes. And do your honors have any questions? Go ahead. If I could address something that was raised by my learned opposition, he has said that CollegeNet is only... That their challenge in the reply papers with regard to the determination is about the application. That's with regard to associated with that or actually associated, term associated. That's a shoehorn. This is... At no point in the Markman hearing, at no point in their initial brief, do they ever challenge the definition of associated found within associated... Sorry, automatic with the definition of automatically associated with. This is especially troublesome because the Markman papers are not in the brief, are not in the record on appeal. There is Spam... It's nowhere until the reply. This is litigation. This is appeal by ambush. If this was addressed previously, we could have dealt with CollegeNet and how it's immaterial to the current appeal. But by putting it in their reply papers and not including the Markman papers so there can be an analysis of what actually was argued below and the determination by the court, it's completely inappropriate. Just as an emphasis or to demonstrate why this was not even an issue until the reply, as I said, CollegeNet was never cited either below or in the initial brief. The argument presented in the reply is therefore raised for the first time in the action. The Markman determination order is not in the addendum to the initial brief. And in fact, the record on appeal contains none of the Markman submissions. It's just... This is a new issue. Now, if we are... If you say the record on appeal, you mean the appendix material. I'm sorry. Actually, no. The record on appeal... The appendix, you're right. The appendix and the addendum. The record on the appeal is everything that's on the district court. You're not suggesting... Right. No, no, no, no. I apologize. In the addendum, the appendix, there is no Markman submissions. It's just not there. But there was no challenge to the determination and the way that the district court interpreted the claim terms. In the initial brief, that's correct. This application or this attempt to apply CollegeNet to the term is something that is really, I believe, an attempt to challenge the Markman determination. Are you referring to the... I guess it's a statement, page seven of the reply brief, where it says, the district court's construction and application of the term automatically is also contrary to the controlling precedent of this court. So you're saying there, they've said previously, there's no claim construction challenge. Now they are challenging. Exactly. And this is not the first time they did this, mind you. In their initial brief, they raised for the first time claiming that Spamex intentionally copied the 41 patent. That's just, that is, for the first time in appeal, as I put in the opposition, it's just completely inappropriate. If we're forced to deal with CollegeNet, which we might be, I would like to point out to the court that it's immaterial. CollegeNet dealt with the term automatic, defining, merely upholding the definition of the term as once initiated, the function is performed by a machine without need for manually performing the function. The term at issue is not automatic, it's automatically associated with. Now, there is no real question that Spamex does nothing automatically particularly associate. Spamex does not launch without the user interaction. Spamex doesn't create a disposable email without user interaction. And Spamex doesn't associate or doesn't even put in a definition until the user authorizes it. Therefore, the automatic under CollegeNet doesn't change the findings of the lower court. Now, there is another issue here that has not been addressed, and that is the dedicated for use. Spamex, the Spamex's disposable emails are not dedicated for use as the term is construed. Now, dedicated for use has been construed as being solely and exclusively for use. The Spamex disposable emails can be dedicated for multiple site domains. The user can dedicate this for any site it wants. It does any website it wants, any domain it wants. It's not one particular website. The other is that there is nothing that Spamex does that stops the website from disclosing and disseminating the email. There is no part of Spamex which requires that that disposable email be used only by the website. The website itself is also free to disseminate that, and other people can. Mr. Spock, let me see. What is it in looking at the claim? Again, back to claim one where it says said email forwarding address being dedicated for use by an entity associated with said webpage. Where there is there the limitation that only that you, in other words, if you go on, if I go on and I create a forwarding email address, okay, where is it in the patent that says that forwarding email address can't be used by or can't be associated with more than one webpage? Well, it says for being dedicated for use by an entity associated with the webpage. Now, if I set, I'm sorry for interrupting, but the time is running short. If I set up, say, an email address for a Travelocity website and then a Google website or webpage, and it's the same email address, isn't still that email address dedicated for use by each of them? Well, but the, if you go, we have to go back to the Markman hearing, the Markman termination, the claim construction termination, dedicated for use has been defined as solely and exclusively for use. Yeah. So, because it's solely and exclusively only one web, only one domain, that- It didn't get any further. I mean, solely and exclusively, it would have been maybe, but the judge didn't go further than that, didn't say solely and exclusively for use by just one. Well, when you say solely and exclusively, it has to be solely and exclusively for someone. In other words, either- Solely and exclusively for use. Right, but- Could be for some other purpose. I'm sorry? Well, her definition was solely and exclusively for use, correct? Right. That says, okay, this is only for use. Could there not be some other purpose? Well, email is an- I think we could look at it two ways. If we're talking about use as in the use by the user, by the client of SpamX, and they're only, they're limited to the use of the disposable email for solely and exclusively for that webpage, that website, actually. Not webpage, because SpamX has nothing to do with webpage, but that website. Then the answer is, this doesn't apply, because SpamX in no way limits the use of that disposable email for anything. Now, if we're looking at it as, what about the party that you've- The webpage, the domain. The domain, there's no limitation that the webpage, that the domain use that disposable email only for themselves to contact the user. There is no limitation on their ability to disseminate. So, if you look at it from any standpoint, there is no solely and exclusively dedication by SpamX. It just doesn't exist. It's not applicable. Let me see if I, again, to come back to my homely example of Expedia. Lovely website. If, does this language being dedicated for use by an entity associated with said webpage not cover the case? Let's assume the entity in question is Expedia, not the particular webpage. But Expedia, and Expedia is associated with all the webpages in the domain. Therefore, why doesn't this language being dedicated for use by Expedia, which is associated with the particular webpage, why doesn't that cover that sort of case? That language. Because, if I understand your question, because there is nothing in SpamX which limits Expedia to use it just for that purpose. Expedia can sell, disseminate, disclose your email address, which is what spamming is created by. There is no limitation on the use of Expedia. Is there any, are there any other questions? I think I've over. I think Judge Harrison may have had a question. Well, just as a follow-up to what Judge Bryson asked, what happens in a situation where you have, let's say, Expedia, is that considered a webpage by itself, or is it considered a domain determination? Well, Expedia, or Google, or Yahoo, is a domain that has multiple webpages as part of its website. Within that site, right. Within what? Within that domain. Within that domain. SpamX focuses on the general domain. The 481 patent focuses on the webpages. If I could just. So, if I understand you correctly, if. And other non-webrelated functions of SpamX. I apologize, I cut off what you were saying. If Judge Bryson's question, then, with regard to Expedia, under the patent, the 481 patent, you have the domain of Expedia. You would have three or four different websites or webpages within that domain. That's correct. Under the 481 patent, each one of the websites would have a different and unique email address. Exactly. That would be automatically generated when a request is made. Exactly. However, under SpamX, you could have one email address for all of the domain for every single one of those webpages be the same one. And if I could just add, under SpamX, you have to choose to apply the email. There's no automatic, the disposable email. There's no automatic aspect to it. So, this is one of these situations where there really is very little that is the same or similar between the patent and the alleged infringement. Well, we've gone well over time. I appreciate your honors. You had one final concluding thought. You can share it with us. But if otherwise, let's move on to rebuttal. Okay. I just want to say that there is no, that the lower court properly dismissed the current patent infringement action because ClickThru SpamX, under the claim construction of the 481, does not automatically associate any disposable email with anything. It does not dedicate or limit use of disposable email by any sender or receiver. And it does not associate any disposable email address with a webpage, rather the domain. Thank you for your honors, indulgence, and have a good one. Thank you. Mr. Chamberlain, you have two minutes. Two minutes. To sum up the points that Your Honor made and Judge Schall made. Chamberlain, I have just one question. Yes, Your Honor. I just want to make sure. I understood the claim construction was not an issue in this case. It essentially is not. But then in the reply brief, it says the district court's claim construction and application of the term automatically is contrary to controlling. Are you challenging claim construction? We're not. Perhaps it should have more artfully or pointedly read as applied, consistent. So to make it very clear, you have no, you're not challenging any of the district court's claim construction. We were not quarreling with the claim construction because actually, as the Markman findings were made, and we argued them on cross motions, it was an interpretive issue in the context of applicable law. And this is why, Your Honors, both hit upon the actual limitations of the patent. These are the two limitations at issue. That Spamex automatically associates the email address, and here's the application, and this is what CollegeNet is relevant to, without additional user input or interaction at the time of the association. In other words, the fields are being, in CollegeNet, the fields were being automatically input when you hit the button that said insert all of the information on the college applications. Same is true with regard to both the Spamex product and the 481 patent. The association is automatically made, whether it's made through a URL or domain. And Your Honor hit on exactly what the limitation is and why this is an infringing product. It dedicates the alias email address for use by an entity, not by a web page, by an entity that's associated with the web page. So what the 481 patent does is, the limitation is that you associate the alias email address with the entity that is associated with the web page to determine the entity, the process that both products go through, is that all web pages of the same domain are presumed to be associated with the same entity. Under the 481 patent, the URL determines the entity, the patent uses the URL, and then in practice, all web pages at the same domain are generally part of the same entity. In response to Your Honor's question, was it three or one? Let's assume that the 481 patent contemplates then three separate alias email addresses for each of those separate web pages, if in fact they are separate within Expedia or within Travelocity or whatever. The fact that, as Judge Schall pointed out, that Spamex might use or recycle the same email address dedicated to that entity that's associated with each web page still infringes. They can use one or more than one because it is dedicated to the entity. It's the entity, not the web page, that is the subject of the limitation of the patent. It's the entity. The focus is on the entity, and we've explained that, Your Honor, in pages 8 through 12 of the reply. I don't think that that's hitting after the bell at all. It's simply explaining in response to arguments that are made at pages 13 through 15 of the responding brief what it is we're talking about specifically. Thank you, Mr. Chamberlain. The case is submitted. Did you have another question? No, no.